NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| WAYNE A. WILLIAMS, *pro se* : | |
|     Plaintiff, : | Civ. No. 04-4952 (GEB) |
|     v. : | |
| MONMOUTH COUNTY SHERIFF'S : | |
| DEPT. MEDICAL DEPT. OF : | **MEMORANDUM OPINION** |
| MONMOUTH COUNTY JAIL, *et al.* : | |
|     Defendants. : | |

**BROWN, District Judge**

    This matter comes before the Court upon Defendants County of Monmouth (improperly named Monmouth County Sheriff's Department and Medical Department of Monmouth County Jail) and Former Warden Ronald Bonaforte's (collectively referred to as "Defendants") unopposed motion for summary judgment, and *pro se* Plaintiff Wayne A. Williams' ("Plaintiff") second application for pro bono counsel. The Court has decided the motion without oral argument pursuant to Federal Rule of Civil Procedure 78. Having considered the written submissions, and for the reasons set forth below, the Court grants Defendants' motion and denies Plaintiff's application.

**I.    BACKGROUND**

    Plaintiff is currently incarcerated at Southwood State Prison in Bridgeton, New Jersey. At the time relative to this Complaint, Plaintiff was incarcerated at the Monmouth County Correctional Institution ("MCCI"). (Defs.' Br. at 1). Plaintiff's imprisonment at MCCI began on or about November 15, 2003. On December 22, 2003, Plaintiff allegedly fell from his bunk and struck his

face on a metal chair. Specifically, Plaintiff suffered injuries on the left side of his face and jaw. (*Id.*). On that day, Plaintiff was brought to MCCI's medical unit for emergency treatment where he underwent a physical examination and was given health instructions by the medical personnel. (Certification of Linda Grasso Jones ("Jones Cert."), Ex. D)[1].

The following day, Plaintiff had an oral consultation visit at the MCCI medical unit with Marten Ladman, D.M.D., an oral surgeon. (*Id.*, Ex. C). Plaintiff was examined by Dr. Ladman, given some medication, and was advised of the risks, benefits, and alternatives to treatment. (*Id.*). On December 24, 2003, Plaintiff's jaw was "wired." (Pl.'s Compl. at 6). On numerous occasions thereafter, Plaintiff received follow-up medical, dental and mental health care visits at MCCI.[2] (Jones Cert. Ex. F). During one of Plaintiff's follow-up visits with Dr. Ladman, Plaintiff was offered dental treatment, but Plaintiff refused. (Jones Cert. Ex. G & Ex. J, ¶ 13). Plaintiff's refusal was based on his own opinion that Dr. Ladman did not follow the correct protocol for administering novocaine. (*Id.*). On or around May 12, 2004, Plaintiff was transferred from MCCI to Southwood State Prison. (*Id.* Ex. I).

On November 16, 2004, Plaintiff filed a Complaint in this Court asserting a 42 U.S.C. § 1983 claim against Defendants and Dr. Ladman. Plaintiff alleges that he did not receive immediate medical attention after he fractured his jaw. (Pl.'s Compl. ¶ 6). Plaintiff further alleges that he

---

[1] The labeling of the exhibits attached to the Jones Certification in Defendants' brief do not exactly correlate with the labeling set forth in the electronic docket sheet. For purposes of this Opinion, when referring to these exhibits, the Court will follow the labeling system of the latter.

[2] Based on the record, Plaintiff received treatment on the following days: January 13, 14, 19, 21, and 29, February 2, 4, 6, 9, 20, 22, 24 (two visits), and 28, March 1, 13, 23, 24 (two visits), 26, 27, and 30, and April 2, 3, and 8, 2004. (Jones Cert. Ex. F).

continues to suffer from problems with his teeth and gums, including a recurring abscess, as a result of inadequate follow-up medical care. Plaintiff complains that the fracture bars in his mouth, which were ultimately removed at Southwood State Prison, should have been removed months earlier. (Jones Cert. Ex. J ¶ 13). On July 8, 2005, Defendants filed the instant motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. On the same day, Plaintiff filed a second application for pro bono counsel.[3] To date, Plaintiff has not filed an opposition to Defendants' motion. The Court has jurisdiction under 28 U.S.C. § 1331.

II.   **DISCUSSION**

   A.   **Defendants' Motion for Summary Judgment**

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1366 (3d Cir. 1996); *Healy v. New York Life Ins. Co.*, 860 F.2d 1209, 1219, n.3 (3d Cir. 1988), *cert. denied*, 490 U.S. 1098 (1989); *Hersh v. Allen Prod. Co.*, 789 F.2d 230, 232 (3d Cir. 1986). The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (noting that no issue for trial exists unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict in its favor). In deciding whether triable issues of fact exist, the court must view the underlying facts and draw all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co.,*

---

[3] Plaintiff's first application for pro bono counsel was denied on January 10, 2005.

*Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995); *Hancock Indus. v. Schaeffer*, 811 F.2d 225, 231 (3d Cir. 1987).

A movant must be awarded summary judgment on all properly supported issues identified in its motion, except those for which the nonmoving party has provided evidence to show that a question of material fact remains. *See Celotex,* 477 U.S. at 324. Put another way, once the moving party has properly supported its showing of no triable issue of fact and of an entitlement to judgment as a matter of law, for example, with affidavits, which may be "supplemented . . . by depositions, answers to interrogatories, or further affidavits," *id.* at 322, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. The non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324.

Defendants assert that Plaintiff's Complaint must be dismissed because he failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"). The PLRA was intended to "reduce the intervention of federal courts into the management of the nation's prison systems." *Booth v. Churner,* 206 F.3d 289, 295 (3d Cir. 2000) (citing *Freeman v. Francis,* 196 F.3d 641, 644 (6th Cir. 1999). By enacting the PLRA, Congress specifically provided that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA has made "exhaustion of all administrative remedies mandatory – whether or not they provide the inmate-plaintiff with the relief he says he desires in his federal action." *Booth,* 206 F.3d at 300. State

prisons and courts have a strong interest in resolving complaints filed by state prisoners. *See id.*

Defendants argue that Plaintiff failed to follow the grievance procedure set forth by the Monmouth County Sheriff's Office Department of Corrections and described in the Inmate Handbook. (Jones Cert. Ex. K). This procedure, which is available to all inmates of MCCI, applies to inmates' concerns regarding medical care at the prison. (*Id.* at 34). The procedure is set forth as follows:

> A. The grievance process begins with the Officer. If the Officer is unable to satisfy the grievance at that level of authority, the grievance shall be referred to the next appropriate supervisor for resolution.
>
> B. Upon receipt [of] the grievance the supervisor shall attempt to settle the grievance and give written response to the inmate regarding the decision made, or the inability to make a decision at the supervisory level.
>
> C. If the supervisor is unable to resolve the grievance at that level, he/she shall refer the grievance to the next level or Department Head, (noting the date and time it was forwarded by checking the appropriate box next to his/her name).
>
> D. At the next step, the Patrol Lieutenant shall make a decision within 24 hours. The written response to the inmate shall state the decision made and the reason for the decision.
>
> E. If the Patrol Lieutenant is unable to resolve the grievance it shall be referred to the Watch Commander. The Watch Commander shall make a decision within 24 hours and submit that decision and the reasons for it to the inmate.

(*Id.* at 34-35). Additionally, the grievance procedure also provides the inmate with an opportunity to appeal if he is dissatisfied with the Watch Commander's decision. (*Id.* at 25).

Defendants contend that Plaintiff failed to exhaust his administrative remedy by failing to comply with the grievance procedure. This Court agrees. There is no evidence in the record

5

demonstrating Plaintiff's compliance with the procedure. Plaintiff has not proffered any evidence that he even satisfied the first step – namely, that he initially informed the Officer of his grievance concerning Defendants' failure to address his medical needs. Instead, in response to an inquiry in the Complaint regarding whether administrative relief had been sought by Plaintiff, Plaintiff responded: "I have continuously put in medical slips, and I wrote to the medical supervisor Ms. Jackson in regards to the matter with no results." (Pl.'s Compl. ¶ 5; *see also* Jones Cert. Ex. J ¶ 13). Plaintiff fails, however, to proffer any evidence of these purported requests. Plaintiff's unsupported assertion is insufficient to defeat summary judgment that he failed to exhaust his administrative remedy as defined by the grievance procedure and set forth in the Inmate Handbook. Additionally, even if Plaintiff provided evidence that he completed medical slips and informed the supervisor of his grievance, there is no indication that he complied with the remaining steps (steps C-E) of the grievance procedure. Consequently, Defendants' motion for summary judgment must be granted and Plaintiff's Complaint is dismissed as a matter of law.

Assuming *arguendo* that Plaintiff satisfied the threshold requirement of exhausting all available administrative remedies, Defendants are nonetheless entitled to summary judgment since Plaintiff cannot succeed on his "deliberate indifference" claim. Although not explicitly stated, it appears that Plaintiff is asserting a violation of his Eighth Amendment right based on Defendants and Dr. Ladman's failure to provide adequate medical care. *United States v. Miller,* 197 F.3d 644, 648 (3d Cir. 1999) (noting the courts' responsibility to construe *pro se* pleadings liberally) (citing *Haines v. Kerner,* 404 U.S. 519 (1972). An inmate's constitutional claim for medical mistreatment may rise to the level of cruel and unusual punishment in violation the Eighth Amendment if there is an imposition of "unnecessary and wanton infliction of pain contrary to contemporary standards

of decency." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999) (citing *Helling v. McKinney*, 509 U.S. 25, 32 (1993)).

In *Estelle v. Gamble*, the Supreme Court held that "deliberate indifference to serious medical needs of prisoners" constitutes such action. 429 U.S. 97, 104 (1976). To succeed on a deliberate indifference claim, the plaintiff must satisfy a two-part test: (1) that prison officials acted with deliberate indifference to the prisoner's medical needs and (2) the medical needs were serious. *See Rouse*, 182 F.3d at 197; *see also Miller v. Hoffman*, Civ. No. 97-7987, 1999 WL 415397, at *4 (E.D. Pa. June 22, 1999) (citing *West v. Keve*, 571 F.2d 158, 161 (3d Cir. 1978)).

The Supreme Court clarified the mental state required to show an official's deliberate indifference in *Farmer v. Brennan*, 511 U.S. 825 (1994). The Court held that an official shows deliberate indifference when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial harm exists, and he must also draw the inference." *Id*. at 837. With regard to his claim against Defendants, Plaintiff fails to adduce any evidence demonstrating that Defendant Bonaforte, or any prison official for that matter, acted with deliberate indifference. Consequently, Plaintiff's Eighth Amendment claim as to Defendants must fail.

Plaintiff's claim against Dr. Ladman is similarly without merit. The Supreme Court noted in *Estelle* that claims for mere negligent diagnosis or treatment do not rise to the level of deliberate indifference. *Estelle*, 429 U.S. at 106. "Where the plaintiff has received some care, inadequacy or impropriety of the care that was given will not support an Eighth Amendment claim." *Norris v. Frame*, 585 F.2d 1183, 1186 (3d Cir. 1978). Consequently, a claim for the violation of the Eighth Amendment will not succeed unless the medical treatment received consists of "act[s] which were

either intentionally injurious, callous, grossly negligent, shocking to the conscience, unconscionable, intolerable to the fundamental fairness or barbarous." *Id*.

Here, the record shows that Plaintiff was not denied medical treatment with regard to his fractured jaw. Instead, the record evidence indicates that Dr. Ladman offered treatment to Plaintiff, but he refused based on his own personal opinion that Dr. Ladman was not administering medical treatment in the correct way. Moreover, Plaintiff continued to receive treatment during the months following the December 22, 2003 incident. Clearly, Plaintiff's Eighth Amendment claim cannot succeed based on these undisputed facts. In light of the absence of evidence that even remotely suggests Dr. Ladman acted in an intentionally injurious or callous manner, Plaintiff's claim against him must fail.

### B. Plaintiff's Application for Appointment of Pro Bono Counsel

The Supreme Court has not recognized, nor has the Third Circuit Court of Appeals found a constitutional right to counsel for litigants in a civil case. *Parham v. Johnson,* 126 F.3d 454 (3d Cir. 1997). A court, however, "may request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1). District courts are vested with broad discretionary authority to determine whether counsel should be designated to such a civil *pro se* plaintiff. *Tabron v. Grace*, 6 F.3d 147, 153 (3d Cir. 1993), *cert. denied*, 510 U.S. 1196 (1994). The Third Circuit has clearly indicated that courts should be careful in appointing pro bono counsel because "volunteer lawyer time is a precious commodity [which] should not be wasted on frivolous cases." *Parham,* 126 F.3d at 458. Therefore, the appointment of counsel should be given consideration only if the plaintiff has not alleged a frivolous or malicious claim. *Id.* at 457.

For the reasons set forth above, this Court has already concluded that Plaintiff's claims are meritless and Plaintiff's Complaint must be dismissed in its entirety.  Accordingly, the Court denies Plaintiff's second application for pro bono counsel.

### III. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 is granted, and Plaintiff's second application for pro bono counsel is denied.  Plaintiff's Complaint is dismissed in its entirety.  An appropriate form of order accompanies this Memorandum Opinion.

Dated:       November 21, 2005

    s/ Garrett E. Brown, Jr.
GARRETT E. BROWN, JR., U.S.D.J.